UNITED STATES' DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL CASE NUMBER:

CHUKWUMA E. AZUBUKO
Plaintiff



V.

PETER B. KRUPP – IN INDIVIDUALAND OFFICIAL CAPACITIES &

KATHLEEN MCCARTHY-NEYMAN
Defendants

Case: 1:19-cv-02764 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 9/11/2019
Description: Pro Se Gen. Civ. (F-DECK)

**INTRODUCTION**

The two Defendants are employees of Massachusetts in the capacity of judges at the Middlesex Superior Court, Woburn – Massachusetts. The Plaintiff's two cases were assigned to them after a long wait for a neutral judge, which never materialized evidently. They assumed judgeship and knowingly condemned the Plaintiff to overt racial judicial discrimination, indeed! That markedly deviated from the Massachusetts' and the United States' Judicial Code of Conduct. They denied the Plaintiff Due Process in stark violation of the matchless law of the land with scientific calmness of mind! The first Defendant was entrusted with the case of *Chukwuma E. Azubuko v. Commonwealth of Massachusetts – Public Utilities Division* with the Middlesex Superior Court docket number as **1781CV02046**. The second Defendant was entrusted with the case of *Chukwuma E. Azubuko v. Charles White* and *others* with the docket number as **1781CV03581**. On the latter case, there was a Defendant by name Boston Herald Incorporated. She was duly served with the Complaint and Summons, but she elected not to submit her Answer as is the rule hitherto. The second Defendant knew about it and did nothing hitherto, but very unlawful!. The said Defendant dismissed some of the Defendants on the case entrusted to her for

not being served with the Complaint and Summons. The service incapacitation flew from the Court's frustration by accident or design. Possibly, the latter. The Plaintiff effected the services based on the numbers of Summonses grudgingly given to the Plaintiff.

It should be noted that there existed pre-filing order condemnation of the Plaintiff at the Middlesex Superior Court many years without an evidentiary's hearing/s before the 2016 state-wide pre-filing sanction against the Plaintiff devoid of evidentiary hearings too by the Massachusettts' Chief Justice Carey. That measure lends itself to cruel and usual act! Given so, it is purely or roundly unconstitutional, indeed! It resoundingly qualifies for "Failure to Train as a Theory of Section 1983 Liability in the 11th Circuit" without mincing words.

It should be noted that on the two cases, the Plaintiff clearly expressed his interest in the jury's trial in the complaints and the cover's sheets as is constitutionally provided – United States and Massachusetts - but it never came to fruition; there were no hearings for the flagrant denials. The Plaintiff is characteristically condemned to miscarriage of justice insouciantly or with impunity or calmness of mind in Massachusetts – Federal's and State's Courts. Statistically, most African-Americans' descent cases dissociate with jury's trial for heart-rendings achievement of unconscionable games of intelligence. The reasons are not far-fetched. Such condescension is very annoying and violate the law civilly and criminally. If granted, necessary witnesses will be excluded. The truth can be tested if need be; the Plaintiff knows what he is driving. The Plaintiff knows what he is driving at with candor in communications.

[R]eiteratively, it will be wise to stat/e/ing that the Plaintiff expressed interest in the jury's trial in the court's cover sheets. The preference was trivialized without a hearing and the Plaintiff was condemned to overt discriminatory bench's trials devoid of any form of hearings [vis-à-vis the demand for jury's trial] Such condescension violates the law irrefutably, once more.

The first Defendant or the first case associated with preventing the Plaintiff from driving for Uber on the alleged basis of bad driving records. [I]mportantly, there were driving records associated with the Plaintiff, which the Plaintiff knew nothing about [them]  For example, in February, 2015 the Plaintiff was stalked by the Brookline's Police Officers – a White male and a female followed the Plaintiff to Green Street; originally, they were inside the/ir cruiser and parked. They stared at the Plaintiff and the Plaintiff did self-same.  The Plaintiff was conscious that they would come after him and it materialized.  They started flashing the blue light on the cruiser behind the Plaintiff while waiting for a pick up.  They asked for the Plaintiff's license and registration.  The Plaintiff provided them calmly.  They took them to their cruiser to run the Plaintiff's background check and they found nothing.  After about seven minutes, they returned to the Plaintiff and said thus: "There was a shooting in the neighborhood earlier."  Sadly, the Plaintiff met the profiles of the shooter, in a manner of speaking!  They just aimed at finding if the Plaintiff was a drug dealer, so as to afford driving Toyota Camry 2013, which the Plaintiff bought in late 2014 thus financing with the Chase Bank.

In 2017, the Plaintiff was provided his driving records during a hearing for termination before hearings thus driving for Uber Ride Service Incorporation.  Glory, the Plaintiff recollected the incident.  There was no citation issued to the Plaintiff on the day in question under the penalties for perjury.  The Brookline's District Court confirmed it too!  Unsurprisingly, it was recorded against the Plaintiff under the auspices or collusion of the Massachusetts' Registry of Motor Vehicles official/s.  What an effrontery abuse of process and powers, indeed!  The first Defendant considered such a criminal's act to be an Act of God shockingly and decided the case against the Plaintiff.  There were other incidents in the Plaintiff's driving records, which the Plaintiff knew nothing about under the penalties for *perjury*.  The Plaintiff's effusive prayers to

the first Defendant for an evidentiary hearing on them were unsuccessful. To him, what counts are his whimsicalities and capriciousness; sadly, it is not the matchless law of the land and it should not be so by and large.

On the second Defendant or the case, the Plaintiff was discriminated for questioning an unfair parking ticket in 1989 or 1990 at the Framingham State College then and now Framingham State University. Glory, the ticket was nullified and animosity reigned. Furthermore, the Plaintiff paid parking's fee at the beginning of the semester in the year in question, but the available parking spaces were over-taxed owing to everyone understandably attending an accelerated summer's classes on the same days. Interestingly, more parking lots were built later on and it cemented the Plaintiff's stance.

The case also associated with Professor White lost of the Plaintiff's Money and Capital Markets *open-book* final examination. He was unavailable in the classroom for clarifications for reasons best known to him. He should have been in the classroom; he owed the Plaintiff and others duty of care, which he immolated – sacrificed - with impunity. The Plaintiff was unfairly discriminatorily graded and the final grade was D-. That reminded the Plaintiff a secret a Plaintiff's Professor of philosophy shared with him unexpectedly at the Bunker Hill Community College – Massachusetts - that he and others used to give African-Americans grades known as "Comb Out." The second Defendant never saw the need to ask for the lost open-book final examination hitherto. The agreement to pick it up from Professor White never materialized, indeed! The reasons were known; the Plaintiff did very well to get a better grade during the final – at least A-. Doubting it will be pointless. It should be noted that within the period, the Plaintiff studied for Chartered Property and Casualties Undwriter (CPCU), which was higher than the master degree in arts business administration (MAA) with the Northeastern University

where the Plaintiff earned his B. Sc. In economics/finance in 1987. The probative evidence exists; he is still in possession of the open-book examination and should be asked to tender it for judicial's scrutiny.

On the self-same case with the second Defendant, Professor Dorothy Bickling also changed the Plaintiff's "scaled" grade to 60% from 65% in the Investments' class and the Plaintiff ended up with the final grade of C+. Absent the 5% deprivation, the Plaintiff would have had at least B- or more; B- is the acceptable minimum grade in the program. The Plaintiff was denied another 5% for the uncertainty, which Professor Bickling confessed in the class – not knowing the difference between *transactional* cost and *informational cost*. Again, the acceptable grade in the master of art/s business administration (MAA) program is B-.

The Plaintiff's final examination on Money and Banking was lost too, but the final grade was B. Professor Huq taught the class during the summer. It would have been greater than B grade absent racial's discrimination! Hitherto, the Plaintiff never saw the final examination despite self-addressed envelope submission as ordered or asked.

The Plaintiff was granted a hearing, but never confronted the teachers. The hearing was unfavorable to the Plaintiff and the Plaintiff appealed. Sadly, the Graduate Council denied the appeal. It will be interesting to noting that the Plaintiff sat for the mid-term examination in the last course – business policy. The Plaintiff did very well too and never saw the grade; it should be A or A- grade. Could the truth be tested! It was taught by Professor Auslander, Saul; he is/was a nice teacher! Surely, he submitted the grade to Dr. Good – the Dean of the Graduate School at the time [in question] The Plaintiff had him for Operations Management too and got a B grade. Eventually, the Plaintiff was arrested and charged for trespassing despite the *duty of care* owed to the Plaintiff and a *business invitee*. Central to numberless racial conspiratorial

agreements, the Plaintiff was prevented from graduating or to earn the MAA in business administration. That means total failure of consideration – no practical benefits to the Plaintiff for the money and hardship associated with the master in business administration pursuit – owing to *deliberate indifference* or unusual cruelty condemnation devoid of moral's qualm. The Plaintiff would have graduated in May, 1991, all things being equal. It should be noted that the second Defendant was a District Attorney in Massachusetts before becoming a judge and for her to adjudicate over the case neutrally was a judicial impossibility! It is a case of *nemo judex in causa* – one being a judge and jury in his/her own case. Central to universally acceptable jurisprudential standards, such overtures are unacceptable, all things being equal.

**PARTIES**

The Plaintiff is a resident of Suffolk County – Massachusetts - and self-same with the two Defendants. The Plaintiff's address will be as stated below. On the Defendants, there contact address on official capacity will be: Massachusetts' Attorney General, Government Bureau & Trial Division, One Ashburton Place, Boston – MA 02108. On the individual capacity, the contact address will be: Middlesex Superior Court, 200 Trade Center, 2nd Floor, Woburn – MA 01801. The Plaintiff knew not their homes' addresses.

**JURISDICTION**

That exists constitutionally, statutorily and procedurally. Some will be cited! [Article III Sec. 2; Eight Amendment; 13th Amendment; 14th Amendment Sec. 1; 28 U.S.C. Secs. 1330, 1346(b) …, *__1361__*, 2505 and 2680(h); 42 U.S.C. Secs. 1981-86; Mass. Const. Arts. 6, 10, 11, 12 and 15; G.L.c. 93 Secs. 10 and 102; G.L.c. 249 Secs. 5 and 6; G.L.c. 258 Secs.1-10; 34 CFR Sec. 300.170; 20 U.S.C. Sec. 1412(a)(22) …; Restatement (Second) of Torts Section 46, comment i (1965); The Universal Declaration of Human Rights Act (1949); …]

## VENUE

That exists too! [28 U.S.C. Sec. 1391] Courts have exercised jurisdiction where venue existed not [by and large] The precedent will not be cited for the sake of time's savings.

## BASES OF COMPLAINT

01) That the Defendants knowingly flagrantly denied the Plaintiff jury's trial in cases he clearly expressed interest in jury's trial in keeping with the Massachusetts' and the United States' Constitutions.

02) That the Defendants' conduct qualified for "*out of all jurisdiction*" and it dissociates from *quasi* and/or *absolute judicial immunity*.

03) That the Defendants election to be blind at the Plaintiff's well-established constitutionally protected rights qualified for violation of their oath of office and treason.

04) That the Defendants' calculated conduct – denial of jury's trials - condemned the Plaintiff to *injury and error of law – miscarriage of justice* – and it means obstruction of justice.

05) That the Defendants knowingly deprived the Plaintiff irreducible minimum constitutional's right – jury trial – as encompassed in the Seventh Amendment.

06) That the Defendants' conduct violated resoundingly the Massachusetts' and the United States' judicial Code of Conduct.

07) That the Defendants' actions markedly deviated from the Massachusetts' Equal Rights Act (MERA) and/or Civil Rights.

08) That the Defendants' actions condemned the Plaintiff to overt racial judicial discrimination and deliberate indifference.

09)  That the Defendants for inexplicable reasons adjudicated over the cases with scientific *lack of skill* [as is provided in the Torts' Law]

10)  That the second Defendants did not adjudicate over the cases based on the issues, which the Defendants raise – *res judicata*, *statute of limitations*, *et cetera*, which the Plaintiff proved to be calculated or knowingly false reasoning.

11)  That the first Defendant did not even made any effort to address himself to the false citations on the Plaintiff's driving record, which were the gist for the Defendant – Massachusetts' Department of Public Utilities - in the case to act in manners, which reflected upon *tortious interference with prospective economic benefits/advantages*.

12)  That the Defendants wobbled over the cases justified clearly abuse of processes and authorities knowingly.

13)  That the Defendants' actions justified *intentional infliction of emotional distress*.

14)  That the Defendants' actions also justified *negligent infliction of emotional distress*.

15)  That the Defendants' actions on the case qualified for *anticipatory breach of jurisprudence* or *fair hearing* constitutionally guaranteed – Due Process.

16)  That the second Defendant acted "out of all jurisdiction" or *ultra vires* for denying the Plaintiff's Rule 60(b) motions unfairly, which the Defendants' attorney opposed not within 10-day deadline [under the Massachusetts' Superior Court Rule 9A] and the Massachusetts' Appeals Court had a precedent that a judgment should be entered automatically in favor of a moveant whose motion was unopposed.

17)  That the Defendants adjudicated discriminatorily or with prejudice central to non-existence of any legal doctrines, which associated with the cases that the Plaintiff did not quash or defeat neatly and judgments were not entered in favor of the Plaintiff.

18)   That the second Defendant trivialized the total failure of consideration, which associated with the proceedings she knowingly wobbled over and denied unopposed motions on the basis of Mass. R. Civ. 60(b)(4).  [**C.f. App. 1**]

## PLAINTIFF AND DEMAND FOR JURY TRIAL

The Plaintiff effusively prays the Court for the prevalence of the sub-head. In essence, the Plaintiff is not interested in the bench's, but jury's trial.  [Seventh Amendment]

## PLAINTIFF AND RELIEVES SOUGHT

The primary law for the lawsuit flows from **28 U.S.C. Sec.1361**. Therefore, the Court should order the Defendants to recuse themselves from the cases. Central to the cases' *strict liabilities* surrounding circumstances, the Court should order entry of judgments in favor of the Plaintiff in the two cases. Doing so is legal's possibility and not impossibility. To the Defendants, it is one's biological determinism – race – that defines the matchless law of the land. Glory, such notion is nothing, but a sophism – false reasoning. In the alternative, there should be Court's order for jury's trial on the two cases. Factly, the Plaintiff is not crying for the moon – asking for what is jurisprudentially or legally impossible.

## PLAINTIFF'S DEMAND FOR COMPENSATORY AND PUNITIVE DAMAGES

On official capacity, the Plaintiff will demand $30m and $40m totaling $70m from each Defendant in relationship to the head. On individual capacity, it will be $25m and $30m totaling $55m each. Cost and interest will be excluded [as is the rule]

## CONCLUSION

Evidently, to those who believe in the matchless Law of the Land, the visible God to mankind is the Court also known as the "Intelligent Bystander" in the United Kingdom (U.K.). Above all, the importance of "The Requirements of Due Process" should not be trivialized vis-à-vis the proceedings, the Plaintiff Hannahly or effusively prays the Court.

_____
CHUKWUMA E. AZUBUKO
*Pro Se*
P O Box 171121
Boston – MA 02117
Telephone: (857) 417 2044


**Dated in Boston – Massachusetts – on Friday – August 30th – 2019.**